UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY SMELLY,** | Civil Action No.: 12-2691 (ES) |
| **Plaintiff,** | OPINION |
| v. | |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Mary Smelly ("Plaintiff" or "Ms. Smelly") seeking review of the Administrative Law Judge's ("ALJ") decision denying Ms. Smelly's application for supplemental social security income disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The Court has considered the submissions in support of and in opposition to the present appeal, (D.E. No. 9), in addition to the administrative record, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court DENIES Plaintiff's appeal.

**I.   Background**

On February 7, 2007, Plaintiff filed an application for supplemental security income disability benefits, alleging disability commencing January 20, 2000. (R. at 15).[1] The claim was initially denied on May 28, 2008. (*Id.*). On August 6, 2008, Plaintiff filed a written request for a hearing. (*Id.*). Plaintiff alleged disability complaining of arthritis throughout the entire body,

---

[1] The Court uses the initial "R." to refer to the Administrative Record.

1

attacks on the immune system, eye problems, high blood pressure, sciatica, tendonitis in the left arm, and tingling and sharp pain in the right hand. (R. at 118). This request was granted and Plaintiff appeared before ALJ Kenneth Chu on November 17, 2009. (R. at 23).

At the time of the hearing, Plaintiff was forty-nine years old with a high school education and no other vocational training. (R. at 28, 30-31). Her last job was as a nurse's aide at a nursing home where she worked for two months before the employer went out of business in 2003. (R. at 31-32). She has not been employed since. (R. at 31). She was financially supported by her children, whom she lives with, and received food stamps. (R. at 28-29).

Plaintiff has a history of medical treatment for arthritis, chronic back and joint pain, polyarthalgia, pain in the hip and knees, and high blood pressure. (R. at 19). Plaintiff alleged that her impairments began when she fell down a flight of steps in 1996, receiving a gash on her knee and a slipped disc in her back. (R. at 34). Plaintiff's rheumatologist prescribed a cane for Plaintiff because her legs can give out on her. (R. at 36-37). The rheumatologist also prescribed a back and arm brace for Plaintiff's joint pain. Plaintiff was previously diagnosed with pseudotumors in her right eye, which were surgically removed by her ophthalmologist in 2000. (R. at 37-38, 410-11). Plaintiff alleged that the pain in her left hand prevented her from tying her shoes, doing her hair, or grasping something for more than a minute. (R. at 38-39). Plaintiff further alleged that she could only walk a block and a half. (R. at 41). Plaintiff stated that she was able to cook, wash dishes, and ride the bus. (R. at 40, 45). Records indicate that Plaintiff attended physical therapy classes and medical visits from 2000 to 2006. (R. at 195-357). Plaintiff was eventually discharged from physical therapy for poor attendance. (R. at 251). In October 2006, an MRI revealed that the disc space in Plaintiff's back was narrowing due to cervical spondylosis, although there was "no evidence of fracture, dislocation, or other

2

significant abnormality." (R. at 726). On May 16, 2007, an MRI revealed that Plaintiff had a slight widening of the scapholunate interval that may indicate ligamentous laxity and a slight narrowing of the triscaphe articulation in the left wrist that likely represented early osteoarthritis, although the MRI revealed no effusion, erosive disease, or fracture. (R. at 696).

Plaintiff underwent two consultative examinations to assist ALJ Chu in his decision. (R. at 747-50, 751-62). On May 23, 2008, Alan Goldfeder, M.D., performed an ophthalmological examination on Plaintiff, finding that her diagnosis of a pseudotumor had been well treated and the interior of the eye was completely normal. (R. at 747-48). Dr. Goldfeder concluded that Plaintiff "should be fully employable from her ophthalmological perspective." (R. at 748).

On March 31, 2010, Justin Fernando, M.D., performed an orthopedic examination on Plaintiff, finding that she had polyarthralgia, chronic pain in the lower back, painful hips and knees, and high blood pressure. (R. at 753). Dr. Fernando found that Plaintiff voluntarily chose not to use her cane during the examination and that her gait was normal even without the use of her cane. (R. at 752). Dr. Fernando found that Plaintiff had her hand and finger dexterity intact as well as "[g]rip strength 5/5 bilaterally." (*Id.*). Dr. Fernando did not refute that Plaintiff felt pain in her joints, but could not verify the reason for this pain through his exam. (R. at 753-54). Dr. Fernando found that Plaintiff could occasionally lift and carry fifty-one to one hundred pounds,[2] frequently lift and carry twenty-one to fifty pounds,[3] and continuously lift and carry up to twenty pounds.[4] (R. at 755). Dr. Fernando found that Plaintiff could sit, stand, and walk for two hours at a time without interruption and for six total hours in an eight-hour workday. (R. at

---

[2] Occasionally is defined as "very little to one-third of the time" during an eight-hour day for five days a week.. (R. at 755).
[3] Frequently is defined as "from one-third to two-thirds of the time" during an eight-hour day for five days a week. *Id.*
[4] Continuously is defined as "more than two-thirds of the time" during an eight-hour day for five days a week. *Id.*

756). Plaintiff's overhead reaching ability could be done frequently with both hands. (R. at 757). Plaintiff's other reaching, handling, fingering, feeling, pushing, and pulling abilities could be done continuously. (*Id.*). Plaintiff could operate foot controls continuously. (*Id.*). Plaintiff could climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl continuously. (R. at 758).

On May 18, 2010, ALJ Chu determined that Plaintiff had severe impairments from arthritis, chronic back and joint pain, pain in the hips and knees, high blood pressure, and polyarthralgia. (R. at 17). Despite this finding, the ALJ denied Plaintiff's application, finding that she was not disabled. (R. at 12-22). On May 27, 2010, Ms. Smelly filed a Request for Review from the Appeals Council, seeking review of ALJ Chu's decision. (R. at 11). On March 7, 2012, the Appeals Council denied the appeal and informed Ms. Smelly that should she disagree with this decision, she may file a civil action. (R. at 1-2). On May 6, 2012, Ms. Smelly commenced the instant action in this Court.

## II. Legal Standard

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g) (2012). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the Commissioner "must adequately explain his reasons in the record for rejecting or discrediting competent

evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1990). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Determining Social Security Benefits

To qualify for Social Security benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381 (2012). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A) (2012). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . .

5

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled . . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

20 C.F.R. § 416.920(a)(4) (2013).

### C. Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). If she is able to make this showing, then she is presumed

disabled. 20 C.F.R. § 416.920(a)(4)(iii). If she cannot show that she meets or exceeds a listed impairment, at step four she must show that her residual functional capacity ("RFC") does not permit her to return to her previous work. 20 C.F.R. § 416.920(e)-(f). If the claimant meets this burden, then at step five the burden shifts to the Commissioner to demonstrate that the claimant can make an adjustment to other work. 20 C.F.R. § 415.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the Commissioner cannot show that the claimant can make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(i).

**III. Discussion**

On appeal, Plaintiff argues that the Commissioner erred as a matter of law in determining that Plaintiff has the RFC to perform the full range of sedentary work. (D.E. No. 9, Brief of Plaintiff Mary Smelly ("Pl.'s Br.") 12). In addition, Plaintiff argues that the Commissioner erred as a matter of law in mechanically applying the medical-vocational guidelines ("the grid") without taking vocational evidence into account or providing an opportunity for Plaintiff to counter the conclusion. (*Id.* at 10-11). Plaintiff asks that the Court remand this case to the Commissioner in accordance with 42 U.S.C. § 405(g) with instructions to reassess Plaintiff's RFC, to obtain the services of a vocational expert while reassessing this RFC, and to issue a new decision. (R. at 16). The Court rejects Plaintiff's contentions.

**A. ALJ's Finding that Plaintiff has the RFC to Perform the Full Range of Sedentary Work**

The Court finds that ALJ Chu correctly found that Plaintiff has the RFC to perform the full range of sedentary work. Sedentary work is defined as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in

> carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met . . . [Walking or standing] would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday.

S.S.R. 96-9p, 61 Fed. Reg. 34478 (July 2, 1996).

In determining the claimant's RFC, if the ALJ decides to "reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review." *Harris v. Comm'r of Soc. Sec.*, No. 11-2961, 2012 U.S. Dist. LEXIS 140308, at *19 (D.N.J. Sept. 27, 2012) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000)). If there is contradictory evidence, "the ALJ must resolve the discrepancy and provide a full explanation to support that resolution." *Id.* (citing *Burnett*, 220 F.3d at 121-22).

Plaintiff argues that the Commissioner erred as a matter of law in determining that Plaintiff had the RFC to perform the full range of sedentary work. Plaintiff specifically alleges that the ALJ failed to correctly construe Dr. Fernando's consultative examinations and failed to account for Plaintiff's testimony of severe pain. (Pl.'s Br. 12-16). Defendant argues that the ALJ appropriately considered Plaintiff's prior medical record and Dr. Fernando's consultative examination in conjunction with Plaintiff's testimony of severe pain. (D.E. No. 13, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def.'s Br.") 5-10).

The ALJ correctly found that Plaintiff has the ability to perform the full range of sedentary work. Based on Dr. Fernando's consultative evaluation, the ALJ noted that Plaintiff had the ability to lift fifty-one to one hundred pounds occasionally, twenty-one to fifty pounds frequently, and up to twenty pounds continuously. (R. at 20, 755). The ability to perform the full range of sedentary work only requires "the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." S.S.R. 96-9p.

The ALJ noted that, according to Dr. Fernando's evaluation, Plaintiff could sit, stand, and walk for six hours total in an eight-hour day. (R. at 20, 756). Sedentary work only requires sitting for a total of six hours and standing and walking for a total of two hours of an eight-hour workday. S.S.R. 96-9p. While Plaintiff argues that Dr. Fernando only found that Plaintiff could sit for two hours at a time, Defendant correctly states that sedentary work allows Plaintiff the opportunity to stand and move within the six-hour sitting period. (Def.'s Br. 7). For sedentary work, a claimant needs only to be able to sit for two-hour intervals. S.S.R. 96-9p.

Plaintiff claims that the ALJ misconstrued the findings of Dr. Fernando's consultative examination. (Pl.'s Br. 15-16). Specifically, Plaintiff finds fault with the ALJ's assessment of Dr. Fernando's report that Plaintiff could perform medium work. (*Id.* at 15). Instead, Plaintiff argues that Dr. Fernando's actual determination is consistent with the ability to perform heavy work since she had the ability lift fifty-one to one hundred pounds occasionally, twenty-one to fifty pounds frequently, and up to twenty pounds continuously. (R. at 20). This argument is peculiar since it appears to be inconsistent with Plaintiff's assertion that she cannot perform the full range of sedentary work given her functional limitations. (Pl.'s Br. 12). The discrepancy between Dr. Fernando's determination is of no moment because the ALJ did not comply with Dr. Fernando's recommendation. The ALJ gave Plaintiff "the benefit of the doubt" and lowered her functional base to sedentary work, which is a lesser exertion level than either medium or heavy work. (R. at 20-21).

Plaintiff also claims that the ALJ did not give enough credence to her testimony stating that she suffered from severe pain. (Pl.'s Br. 13-15). A statement that alleges pain must be supported by "medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain . . . ." 20 C.F.R.

9

§ 416.929 (2013). If any inconsistencies occur, the ALJ must include "a resolution of any inconsistencies in the evidence as a whole . . . ." S.S.R. 96-8p, 61 Fed. Reg. 34478 (July 2, 1996).

Here, the ALJ properly considered Plaintiff's testimony alongside Plaintiff's prior medical record and Plaintiff's two consultative examinations to determine how this pain would erode Plaintiff's occupational base. The ALJ first considered Plaintiff's testimony. (R. at 18-19). The ALJ specifically noted Plaintiff's allegations of "pain throughout her body, radiating to her extremities so that she cannot grasp for more than a few minutes" as well as her difficulty to "stand, walk, and sit due to pain." (R. at 20).

The ALJ then explained why additional evidence fully supports Plaintiff's ability to perform the full range of sedentary work, logically noting and resolving any inconsistencies between Plaintiff's statement and the medical record. The ALJ noted inconsistencies within Plaintiff's own testimony that cut against Plaintiff's allegations of pain. The ALJ noted that despite these allegations of severe pain, Plaintiff also testified that "she is able to care for herself, do cooking, wash, shop and take public transportation" as well as other "full activities of daily living." (R. at 20, 39-46).

The ALJ then reconciled the inconsistencies from Plaintiff's testimony by examining her prior medical records. Despite Plaintiff's allegations regarding her walking difficulties, the ALJ noted prior hospital records indicating that Plaintiff's gait and station was unencumbered. (R. at 19, 198). The ALJ also noted that while her MRIs show a slight narrowing in the cervical spine and in her left wrist a slight narrowing of her triscaphe articulation and a slight widening of her scapholunate indicating ligamentous laxity and possible early osteoarthritis, the MRIs showed no evidence of erosive disease. (R. at 19-20, 726-28, 733-34). The ALJ properly used Plaintiff's

prior medical record showing no significant abnormalities in making his determination that Plaintiff was able to perform the full range of sedentary work.

The ALJ finally reconciled the inconsistencies from Plaintiff's testimony by examining the consultative examinations. Despite Plaintiff's complaints about her vision, the ALJ found that her vision was not a severe impairment, relying on the ophthalmological examination of Dr. Goldfeder, who found that Plaintiff was "fully employable from her ophthalmological perspective." (R. at 747-48). Despite Plaintiff's complaints regarding pain in her knees, the ALJ further noted that Plaintiff had normal gait and station before Dr. Fernando. (R. at 20, 752). Despite Plaintiff's complaints regarding pain in her hands and her inability to grasp objects with her left hand, the ALJ noted that Plaintiff's fine motor activity was normal and that she had full grip strength bilaterally in Dr. Fernando's examination. (R. at 20, 752). Despite Plaintiff's complaints of back pain, the ALJ noted from Dr. Fernando's examination that Plaintiff's cervical spine was normal and Plaintiff had full range of motion in the shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles bilaterally. (R. at 20, 753). The ALJ properly used this record showing normal vision and joint movement in his determination that Plaintiff was able to perform the full range of sedentary work.

Plaintiff specifically contended that the ALJ did not properly evaluate Plaintiff's use of a cane in determining the sedentary occupational base. (Pl.'s Br. 14). A cane, however, does not automatically erode a claimant's sedentary occupational base significantly.[5] S.S.R. 96-9p. In addition, the record does not show unequivocally that Plaintiff needs this cane on a regular, consistent basis. Plaintiff testified that she primarily uses the cane on the streets, not within her home. (R. at 36). In addition, Dr. Fernando noted that Plaintiff voluntarily chose not to use a

---

[5] The Social Security Rulings stated that needing a cane or other medically required hand-held assistance device because of a neurological impairment always significantly erodes the sedentary occupational base. S.S.R. 96-9p. Here, Plaintiff does not suffer from such impairment.

11

cane during the evaluation. (R. at 752). Without the use of a cane, Dr. Fernando found that Plaintiff "appeared to be in no acute distress," had a normal gait, and could "walk on heels and toes without difficulty." (*Id.*). Even though the record indicates that Plaintiff did not need a cane to walk normally, the ALJ still accounted for Plaintiff's use of a cane by assigning a sedentary occupational base, a base that was lower than the recommendation of Dr. Fernando. (R. at 20-21). As such, the Court is not persuaded by Plaintiff's contention and affirms the ALJ's finding that Plaintiff has the RFC to perform the full range of sedentary work.

### B. The ALJ's Findings at Step Five – Application of the Grid

The Court finds that ALJ Chu properly relied upon the grid in step five.[6] A claimant seeking social security benefits can have exertional and nonexertional limitations. 20 CFR § 404.1569a (2013). Exertional impairments are limitations that only affect the claimant's strength demands of jobs, such as "sitting, standing, walking, lifting, carrying, pushing, and pulling . . . ." 20 CFR § 404.1569a(b). Nonexertional impairments are limitations that only affect the claimant's ability "to meet the demands of jobs other than the strength demands . . . ." 20 CFR § 404.1569a(c)(1). Relevant examples of nonexertional impairments include "difficulty in seeing or hearing . . . and difficulty performing the manipulative or postural functions of some work

---

[6] As Defendant admits, the ALJ mistakenly relied on Rule 201.27, the corresponding Rule for a younger individual, aged 18-44. (Def.'s Br. 4 n.4). Plaintiff was a younger individual, aged 45-49, when the request was filed. (*Id.*). Nevertheless, the Plaintiff would still be found "not disabled" in this age group. The Code of Federal Regulations states that a finding of "disabled" is warranted for individuals in this age group who are restricted to sedentary work, are unskilled or have no transferable skills, have no past relevant work or can no longer perform this relevant work, and are unable to communicate in English or can speak and understand English but cannot read or write English. 20 C.F.R. § 404 app. 2(h)(1)(i)-(iv) (2008). Plaintiff does not qualify because she graduated from high school and can understand and communicate in English. (R. at 30). Nevertheless, the Code of Federal Regulations states that a decision of disabled may still be found for individuals "who do not have the ability to perform a full range of sedentary work." 20 C.F.R. § 404 app. 2(h)(2). As stated in this opinion, the ALJ correctly determined that Plaintiff was able to perform the full range of sedentary work. Therefore, Plaintiff will still be found "not disabled" in the younger individual, aged 45-49 category.

such as reaching, handling, stooping, climbing, crawling, or crouching." 20 CFR § 404.1569a(c)(1)(iv), (vi). In determining if there are exertional and nonexertional impairments, the ALJ must resolve all discrepancies and "provide a full explanation to support that resolution." *Harris*, 2012 U.S. Dist. LEXIS at *19 (citing *Burnett*, 220 F.3d at 121-22).

If the impairment is primarily exertional and no severe nonexertional impairments exist, the ALJ is permitted to simply use the grid to determine work capacities. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). When a claimant has a combination of severe exertional and nonexertional impairments, or solely severe nonexertional impairments, "the grids cannot automatically establish that there are jobs in the national economy . . . ." *Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000). When there are severe nonexertional impairments, the ALJ must use the "testimony of a vocational expert or other similar evidence, such as a learned treatise" in addition to the grid to determine if there are jobs in the national economy that the claimant can perform. *Id.* at 273. If the ALJ does not take the testimony of a vocational expert or the like in these situations, the ALJ must "[provide] notice to the claimant of his intention to take official notice of this fact (and [provide] the claimant with an opportunity to counter the conclusion)." *Id.* at 261. In *Sykes*, "[t]he Third Circuit did not hold that vocational testimony was required where a plaintiff's nonexertional impairments were not severe." *Ortega v. Comm'r of Soc. Sec.*, No. 11-6303, 2013 U.S. Dist. LEXIS 23326, at *16 (D.N.J. Feb. 20, 2013) (citing *Marquez v. Astrue*, No. 10-0463, 2011 U.S. Dist. LEXIS 21711, at *9 (D.N.J. Mar. 4, 2011)).

Plaintiff argues that she has both exertional and nonexertional impairments, and that the ALJ should have taken vocational evidence from a vocational expert or should have provided notice to Plaintiff to allow for an opportunity to respond. (Pl.'s Br. 11). Defendant argues that

the ALJ properly found that Plaintiff could perform the full range of sedentary work and that a vocational expert was not needed. (Def.'s Br. 10).

The ALJ found that Plaintiff's pain in her back, joints, hips, and knees was severe. (R. at 17). Pain can affect nonexertional activity. *See* 20 § CFR 404.1569a(c)(1); *Allen v. Comm'r of Soc. Sec.*, No. 10-2614, 2011 U.S. Dist. LEXIS 3575, at *19 (D.N.J. Mar. 30, 2011). Yet, the ALJ discredited potential nonexertional impairments that may stem from this severe pain and may erode the occupational job base of sedentary work. First, Plaintiff alleged that she had problems with her eyesight. (R. at 118). "Using the eyes and ears to see and hear" is an example of a nonexertional impairment. S.S.R. 83-14, 45 Fed. Reg. 55566 (Feb. 26, 1979). The ALJ pointed to Dr. Goldfeder's consultative ophthalmological examination reporting that Plaintiff was fully employable "from her ophthalmological perspective" and correctly found that this was not a severe impairment. (R. at 17, 748). Second, Plaintiff alleged that pain in her left hand prevents her from tying her shoes, doing her hair, or grasping something for more than a minute. (R. at 38-39). Manual dexterity is important for unskilled sedentary jobs, and limitations on manual dexterity are nonexertional impairments. S.S.R. 83-14. Two different types of medical evidence, however, show that Plaintiff has full bilateral manual dexterity. The ALJ pointed to Dr. Fernando's consultative examination that found that Plaintiff had her "hand and finger dexterity intact" and full bilateral grip strength. (R. at 20, 752). Plaintiff's medical records from physical therapy also show that she had full finger extension and flexing capabilities. (R. at 266). Third, pain that affects reaching, handling, stooping, climbing, crawling, or crouching can be a nonexertional impairment. 20 CFR § 404.1569a(c)(1)(vi). Dr. Fernando found in his consultative examination, however, that Plaintiff could perform all of these actions continuously,

with the exception of the ability to reach overhead which the Plaintiff could perform frequently.[7] (R. at 757-58). While the ALJ did not specifically state that Plaintiff did not have severe nonexertional impairments, the Court finds that the ALJ's evaluation of nonexertional factors provides enough relevant evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that there are no severe nonexertional impairments. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). Thus, this Court is satisfied with the ALJ's determination under this limited standard of review. (*Id.*).

## IV. Conclusion

For the foregoing reasons, Plaintiff's appeal is DENIED.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**

---

[7] This Court has found that severe nonexertional impairments exist when the claimant could only occasionally balance, stoop, kneel, crouch, crawl, and climb a ramp or stairs and never climb a ladder, rope, or scaffolds. *Harris v. Comm'r of Soc. Sec.*, No. 11-2961, 2012 U.S. Dist. LEXIS 140308, at *20 (D.N.J. Sept. 27, 2012.) Here, Dr. Fernando stated in his consultative examination that Plaintiff could perform all of these tasks continuously. (R. at 757-58).

15